IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARMEN C. HOLLIDAY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:09-CV-01449-AW |
| | * | |
| JOHN R. HOLLIDAY, *et al.*, | * | |
| | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Defendant BAC Home Loans Servicing LP f/k/a Countrywide Home Loans, Inc. ("BAC")'s Motion for Summary Judgment. (Doc. No. 56). The parties have fully briefed the pending Motion, and the Court deems that no hearing is necessary. In her Complaint, Plaintiff Carmen Holliday alleges six separate causes of action: (1) Fraud; (2) concealment; (3) violation of the Maryland Finder's Fee Act; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"); (5) violation of the Truth in Lending Act ("TILA"); and (6) negligence. Defendant BAC filed a Motion for Summary Judgment on all counts, arguing that Plaintiff has no viable claim against BAC. For the reasons stated herein the Motion for Summary Judgment is **GRANTED.**

I. **<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

On June 3, 2009, the plaintiff, Carmen Holliday, filed her complaint against defendants, John R. Holliday, Cambridge Home Capital, LLC ("Cambridge"), Hugh H. Cuthrell III ("Mr. Cuthrell"), and BAC Home Loans Servicing LP f/k/a Countrywide Home Loans, Inc. ("BAC"), US Recordings, Inc., and John Doe Entities 1 through 100. Defendant Cambridge filed a Third Party Complaint against Eastern Settlement Corporation on September 3, 2009. (Doc. No. 11).

This case arises from an alleged forgery of mortgage loan documents associated with a mortgage refinancing transaction for the real property located at 6 Grotto Court, Germantown, Maryland. (Doc. No. 56-1 at 2). The instant case was removed from the Circuit Court of Montgomery County, Maryland on June 3, 2009. (Doc. 1). Plaintiff alleges that her husband, defendant John R. Holliday, forged her signature and initials on these loan documents and that defendant Mr. Cuthrell, an alleged agent of Cambridge, witnessed the forgeries and affixed his own signatures as a witness and notary public. (Doc. No. 56-1 at 2). Plaintiff alleges she was not present at the time of this transaction and that Mr. Cuthrell intentionally concealed the alleged forgery from other defendants in this action, including Cambridge and BAC. (Doc. No. 57 at 4). At the refinancing transaction on February 18, 2008, Cambridge loaned $308,550.00 to pay off the original loan on the property for $286,380.00. (Doc. No. 56-1 at 3).

Cambridge assigned the mortgage loan in question to Countrywide Home Loans Servicing, LP. (*Id.*). BAC subsequently acquired Countrywide and is the current owner and holder of the Note secured by a Deed of Trust in this case. (Doc. 57 at 7-8). Plaintiff alleges that the Deed of Trust is invalid and defendant BAC is liable on six separate causes of action: (1) Fraud; (2) concealment; (3) violation of the Maryland Finder's Fee Act; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"); (5) violation of the Truth in Lending Act ("TILA"); and (6) negligence. Plaintiff now faces foreclosure proceedings due her inability to pay the mortgage due to BAC. (Doc. 2 at 13).

Default was entered against U.S. Recordings, Inc. and Mr. Cuthrell on December 1, 2009. (Doc. No. 24). On November 18, 2010, Defendant BAC filed a Motion for Summary Judgment on all of the claims in Plaintiff's complaint (Doc. 56-1 at 2, 13). BAC filed a Motion to Amend their answer to add two counterclaims on January 22, 2010 (Doc. No. 27). In their counterclaims, BAC which seeks an equitable mortgage in the amount made to satisfy the

original loan plus interest from the date the original loan was satisfied, and BAC requests that the Court declare that the doctrine of equitable subrogation applies to their mortgage. (Doc. 27-2).

## II. Standard of Review

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, any affidavits show that there is no genuine material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, affidavits, admissions and answers to interrogatories which it believes demonstrate the absence of a genuine issue of material fact." *Bien v. United States Fidelity and Guaranty Co.*, No. Civ. HM-93-1756, 1994 WL 733564 at *3 (D. Md. Aug. 15, 1994) (quoting *Celotex Corp.*, 477 U.S. at 323 (internal quotation omitted)). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. See Deans v. CSX Transp. Inc., 152 F.3d 326, 330-31(4th Cir. 1998). Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## III. Discussion

Defendant BAC argues that it is entitled to judgment as a matter of law on all six counts of Plaintiff's claim. All six counts rely on Plaintiff's argument that BAC, formerly known as Countrywide Home Loans Servicing, LP, became subject to any and all claims Plaintiff had against Countrywide at the time they took over Plaintiff's mortgage. (Doc 57 at 11). Plaintiff further contends that once Countrywide assumed the mortgage from Cambridge, Countrywide became subject to any and all claims Plaintiff had against Cambridge at the time of the assignment. (*Id.*). However, Defendant asserts that Plaintiff has no viable claim against them because it is undisputed that they did not participate in the origination of Plaintiff's loan. (Doc. No. 56-1).

### a. Claims for Fraud and Concealment

As a preliminary matter, the Court finds that Defendant is not liable for the allegedly wrongful acts of Cambridge.[1] Relying on *Cumberland Coal and Iron Company v. Parish,* 42 Md. 598 (1875), Plaintiff asserts that Defendant Bank of America assumed the mortgage in question subject to any claims that she had against Countrywide at the time that BAC took over the mortgage. (Doc. No.57, at 11). The Court believes that Plaintiff's reliance on *Cumberland Coal and Iron Co. v. Parish* is misplaced.

In *Cumberland*, the Court found that "where the assignment is made without the concurrence of the mortgagor . . . the assignee takes the mortgage, and the debt secured by it, upon the same terms, and subject to the like equities and defenses that it was subject to in the hands of the assignor." *Cumberland Coal and Iron Co. v. Parish*, 42 Md. 598, 614 (1875). However, the *Cumberland* case concerned the defenses, not affirmative claims, against the enforcement of the mortgage. *See also Le Brun v. Prosise*, 197 Md. 466, 476 (1951) (citing the holding of *Cumberland Coal* for the proposition that "[a] mortgage is not a negotiable

---

[1] Liability under the Truth in Lending Act may be imposed on a voluntary assignee. However, this argument will be addressed later in the Opinion.

instrument, and an assignee of a mortgage is subject to any defense of the mortgagor against the mortgagee.")). Moreover, "under Maryland law, an obligor could assert only a claim for recoupment (i.e., one based on a claim against the assignor arising from the same transaction as gave rise to the assignee's enforcement action), not a claim for a setoff (i.e., one based on a claim extrinsic to the transaction underlying the assignee's claim against the obligor)." *Fulmore v. Premier Financial Corp.*, JFM-09-2028, 2010 WL 4286362 at *5 (D. Md. Oct. 29, 2010). It is well-established that "an assignee who t[akes] an instrument 'subject to . . . claims and defenses' [is] not subject to affirmative claims for relief based on the assignor's misconduct, but the assignee instead face[s] only the risk that his own claim could be reduced or eliminated because of the misconduct of the assignor." *Id.* at 4. *See also Nance v. Baltimore American Mortg. Corp.*, Civ. No. JFM-10-2083, 2010 WL 4291579 at *1 (D. Md. Oct. 29, 2010) (finding under Maryland law, "an assignee has no affirmative liability (under [Maryland's Secondary Mortgage Loan Law] or otherwise) to an obligor for an assignor's misconduct.").

In the instant case, Plaintiff brings six affirmative, not defensive claims against BAC, the assignees of the loan. Therefore, Plaintiff cannot hold BAC liable as the assignee of a loan for the conduct of the original lender. The fact that Mr. Holliday allegedly forged Plaintiff's signature or that Mr. Cuthrell may have acted as an agent for Cambridge and concealed the forgery does not change the fact that liability cannot be imputed to BAC for Cambridge's allegedly unlawful conduct. As such, Defendant BAC is entitled to summary judgment on each of the following counts in her Complaint: (1) Fraud; (2) concealment; (3) violation of the Maryland Finder's Fee Act; (4) violation of the Real Estate Settlement Procedures Act ("RESPA");[2] (5) violation of the Truth in Lending Act ("TILA");[3] and (6) negligence.

---

[2] As an additional basis for granting Defendant BAC summary judgment on Plaintiff's RESPA claim, in *Taylor v. Onewest Bank, FSB*, No. 10-2227, 2011 WL 768962 (D. Md. Feb. 28, 2011), this district held that no private right of action exists under, §2603 of the RESPA. Likewise, no private right of action exists for §2604 of RESPA. *See*

### b. Violation of the Truth In Lending Act

In her Complaint, Plaintiff asks the Court to rescind the mortgage in question pursuant to provisions allowing for rescission under the Truth in Lending Act (TILA).[4] In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff states that mortgage the at issue is void *ab initio.* (Doc. No. 57, at 13). However, in her Complaint, the plaintiff has not sought a declaratory judgment from the Court seeking the Deed of Trust to be declared void *ab initio*, and therefore, at this juncture, the Court will not assess the validity of Plaintiff's claim that the mortgage is void.

Regarding Plaintiff's claim for rescission, Plaintiff alleges BAC violated TILA because Cambridge failed to provide Truth in Lending disclosure statements and because "BAC assumed the relevant mortgage subject to Plaintiff's claims at the time of the assignment." (Doc. 57 at 13). Defendant BAC alleges that "in order to rescind a loan transaction under TILA, borrowers must show that they have the ability to return the loan proceeds to the lender," and because Plaintiff has failed to show she can repay the loan, Plaintiff cannot rescind. (Doc. 56-1 at 10). However, Plaintiff contends that she is not obligated to show she can pay back the loan because Mr. Holliday forged her signature at the refinancing transaction, and thus her ex-husband is solely liable for the loan. (Doc. 57 at 13).

---

*Rush v. Am. Home Mortg., Inc.*, 07-cv-0854 (D. Md. Apr. 6, 2010) (noting that the Eleventh Circuit has determined that §2604 "does not provide for a private right of action either explicitly or impliedly.").

[3] The Court will address the Defendant's liability for its alleged violations of TILA and its alleged negligence separately in this Opinion.

[4] The Court notes that under TILA,

> [A]ny civil action for a violation [of the TILA] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.

15 U.S.C. § 1641(a).

For the purposes of this Opinion, the Court will assume that Cambridge's assignment of the mortgage in question to BAC was voluntary. The Court does not believe that this assumption affects the outcome of its analysis, as the record does not demonstrate the Plaintiff is entitled to the relief she seeks under TILA.

"[U]nder Fourth Circuit precedent, the right to rescind 'remains an equitable doctrine subject to equitable considerations.'" *Benjamin v. Nationwide Lending Corp*, No. AW-08-2511, 2010 WL 610768, *3 (D. Md. 2010). "The equitable goal of rescission under TILA is to restore the parties to the status quo ante." *American Mortg. Network, Inc v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) (citing *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (internal quotation omitted)). The Fourth Circuit has upheld this assertion in *American Mortg. Network v. Shelton* and more recently the Court held the same in *Benjamin v. Nationwide Lending Corporation*. *See Benjamin*, 2010 WL 610768 at *2 (discussing the Fourth Circuit's findings in *Am. Mortgage Network, Inc. v. Shelton,* 486 F.3d 815, 819 (4th Cir. 2007) and agreeing that where the plaintiffs "admitted that they were unable to repay the loan and had not made any payments on the loan," rescission is not "automatic.")).

In *Haas v. Falmouth Financial, LLC*, No. 10-cv-565, 2011 WL 1791907 (E.D.Va. May 4, 2011), the plaintiff claimed that his signature had been forged on certain loan documents, and who sought rescission of a mortgage under TILA. The defendants moved for summary judgment, claiming that the plaintiff had not produced sufficient evidence to show that he could meet his tender obligation under TILA. The Court allowed the parties additional 60 days to file supplemental summary judgment briefings addressing the Plaintiff's ability to meet his tender obligation under TILA. *Id.* at *4. The Court ultimately dismissed the plaintiff's rescission claim, finding that the plaintiff had failed to demonstrate a dispute of fact as to his ability to meet his tender obligation. *Id. at* *5. In the Court's Opinion on the Defendants' Motion for Summary Judgment, the Court noted that "[d]istrict courts in the Fourth Circuit following *Shelton* have routinely dismissed plaintiff's rescission claims, both at the 12(b)(6) stage and at summary judgment, where plaintiffs fail to allege or demonstrate they would be able to meet their tender obligation if rescission were ordered." *Id.* In the case at bar, Plaintiff has failed to demonstrate, let alone argue, that she is able to meet her tender obligation if rescission were in

fact allowed in this case.  Accordingly, the Court does not find that rescission is appropriate, and grants Defendant's Motion for Summary Judgment on Plaintiff's TILA claim.

   c. **Negligence**

Finally, the Court will address the Plaintiff's negligence against Defendant BAC. Specifically, Plaintiff alleges that all defendants, including BAC violated a duty of care to ensure that she was aware of all disclosures required by the Maryland Finder's Fee, RESPA, and TILA. BAC contends that no duty of care existed because it did not make the loan at issue, did not process any loan application, and was not present at the refinancing transaction.

"The existence of a legally cognizable duty owed by the defendant to the plaintiff . . . is essential to a cause of action for negligence."  Moreover, "[i]n order to maintain a tort cause of action based on negligence, the plaintiff must first establish that "the defendant was under a duty to protect the plaintiff from injury." *Rosenblatt v. Exxon*, 642 A.2d 180, 188 (Md. 1994).  In *Jacques*, the bank agreed to process an application for a loan, and the court determined the bank owed its customer a duty of reasonable care in processing the application. *Jacques v. First Nat'l Bank of Maryland*, 515 A2d. 756 (1986).  Because BAC did not participate in the loan application, Plaintiff's reliance on *Jacques v. First Nat'l Bank* is misplaced.  Furthermore, courts in this district have failed to extend the holding in *Jacques* and "[m]ore recent Maryland law has held that the relationship between a bank and its customer is contractual." *Abdel-Malack*, 748 F. Supp. At 513 (quoting *Lema v. Bank of America, N.A.*, 826 A.2d 504 (Md. 2003) (internal quotations omitted).  Plaintiff's argument is unavailing because no evidence supports that BAC was at the refinancing transaction or that it processed the loan application for which a duty would be imposed.  Furthermore, as the Court has already articulated, BAC did not assume the liabilities of its assignor, Cambridge.

To the extent that Plaintiff brings a negligence claim against BAC for the actions of Mr. Cuthrell and Cambridge, under an agency relationship theory, "[t]here are three characteristics,

which, while not exclusive, are particularly relevant to the determination of the existence of a principal-agent relationship: (1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Bowser v. Resh*, 907 A.2d 910 (Md. 2006) (citing Restatement (Second) of Agency §§ 12-14 (1958) (other citations omitted)). As BAC points out, Plaintiff has not provided evidence of an agency relationship between BAC, Mr. Cuthrell, and Cambridge.

Moreover, BAC contends that Plaintiff's common law negligence claim based on failure to comply with RESPA and TILA is pre-empted by federal law. *See Mincey v. World Savings Bank*, 614 F.Supp.2d 610, 644-45 (D.S.C. 2006) (holding that a cause of action for unfair competition is preempted because the state law claims were based on alleged violations of the TILA.). The Court agrees with Defendant that Plaintiff's negligence claims are pre-empted by federal law, as Plaintiff bases its negligence claim entirely on the duty to disclose information in compliance with TILA, RESPA, and the Finder's Fee Act. Therefore, the Court grants summary judgment to Defendant on Count VI for Negligence.

### d. BAC's Counterclaims against Plaintiff

Defendant BAC seeks summary judgment on Counts I and II of its Counterclaims. In Count I of its counterclaim, BAC brings a claim for unjust enrichment against Plaintiff and requests that the Court grant it an equitable mortgage in the amount of $286,380.00 plus pre-judgment and post-judgment interest, as well as taxes and insurance premiums paid by BAC. In Count II of their counterclaim, BAC requests that the Court declare that the doctrine of equitable subrogation applies to the mortgage in question.

Maryland law recognizes the doctrine of equitable subrogation. *G.E. Capital v. Levenson*, 657 A.2d 1170, 1175 (Md. 1995). Equitable subrogation provides that [a lender] who pays the mortgage of another and takes a new mortgage as security will be subrogated to the rights of the first mortgagee. *Id. See also Bierman v. Hunter*, 988 A.2d 530, 535 (Md. 2010)

("[O]ne who lends money upon the security of a mortgage that is in fact ineffective because the person executing it had no authority to do so is entitled to be subrogated to the rights of the mortgagee under a prior valid mortgage discharged with the proceeds of the invalid one.") In *Hunter*, the husband forged his wife's signature on a mortgage when he refinanced the couple's pre-existing mortgage. *Id.* at 544. The defendant in *Hunter* argued that the "court of equity has broad powers concerning subrogation to prevent unjust enrichment . . . [and] [plaintiffs] would be unjustly enriched if they were not required to repay the funds paid at closing." *Id.* (internal quotations omitted). The court in *Hunter* awarded the lender an equitable lien in the amount it paid to satisfy the couple's prior mortgage, which both husband and wife were obligated to pay.

It is clearly established that "[i]f an individual obtains real property by fraud and executes a mortgage on that property, the mortgage is valid in the absence of proof that the mortgagee had notice of the fraud." *Wells Fargo Bank, N.A. v. Henson*, 649 F.Supp.2d 431, 433 (D. Md. 2009) (citing *Wicklein v. Kidd*, 131 A. 780, 783 (Md. 1926) (internal quotations omitted)). A bank that is an assignee of a deed of trust from a mortgage "is entitled to the protections available to bona fide purchasers for value, whe[n] such lenders were without notice of the mortgagor's fraudulent conduct." *Id.* (quoting *Washington Mut. Bank v. Homan*, 974 A.2d 376, 396 (Md. 2009)).

It is undisputed that the refinancing transaction between Cambridge and Plaintiff paid off the original loan for $286,380.00. Therefore, because some of BAC's loan proceeds were used to pay off the original loan on the property, even if Mr. Holliday forged Plaintiff's signature, there is no genuine dispute of genuine fact that the doctrine of equitable subrogation applies to the loan in question. Plaintiff admits in the Complaint that BAC did not know about the purported fraud. (Doc. 2 at 12). Moreover, the fact that Plaintiff's refinancing transaction was completed with a fraudulent signature does not negate the fact that Plaintiff had a pre-existing mortgage, and BAC has now satisfied that mortgage. For the aforementioned reasons, Defendant is entitled to summary judgment on both of its counterclaims, with the result that BAC is entitled

an equitable lien in the amount of $286,380.00, plus pre-judgment and post-judgment interest, as well as all taxes and insurance premiums paid by BAC. Furthermore, the Court declares that the doctrine of equitable subrogation applies to this case, and that the Second Deed of Trust on the property in question is effective as a valid, first priority lien against the property in the amount of $286,380.00, plus pre-judgment and post-judgment interest as well as all insurance premiums paid by BAC.[5]

## Conclusion

For the reasons stated above, the Motion for Summary Judgment filed by Defendant BAC is **GRANTED**. The Court will proceed to set this matter in for trial as to the remaining defendants in this case. A separate Order will follow.


August 11, 2011                                            /s/_____
Date                                                Alexander Williams, Jr.
                                                    United States District Judge

---

[5] In the corresponding Order to this Opinion, the Court will direct BAC to submit a proposed judgment reflecting the current total amount of the equitable lien that it holds on Plaintiff's property.