IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| CARMEN C. HOLLIDAY, | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | Civil Action No. 09-cv-01449-AW |
|  | * | |
| JOHN R. HOLLIDAY *et al.*, | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiff Carmen Holliday brings this action against multiple Defendants. They include: (1) John R. Holliday; (2) US Recordings, Inc.; (3) Hugh H. Cuthrell, III; (4) BAC Home Loans Servicing LP f/k/a Countrywide Home Loans, Inc. (BAC); (5) Cambridge Home Capital; and (6) John Doe Entities 1 through 100. Three motions are outstanding. They are: (1) Plaintiff's Motion for Leave to File an Amended Complaint; (2) Cambridge Home Capital's Motion for Summary Judgment; and (3) Plaintiff's Motion to Set Aside Judgment. The Court has reviewed the entire record and finds no hearing necessary. For the reasons articulated herein, the Court **DENIES AS MOOT** Plaintiff's Motion for Leave, **GRANTS** Cambridge Home Capital's Motion for Summary Judgment, and (3) **DENIES** Plaintiff's Motion to Set Aside Judgment.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

This case arises from Cambridge Home Capital's (Cambridge) refinancing the loan of Plaintiff Carmen Holliday and Defendant John R. Holliday on the property of 6 Grotto Court, Germantown, Maryland 20874 (Property). In May 2007, Heartland Home Finance, Inc. issued Mr. and Ms. Holliday their first loan and mortgage on the Property. *See, e.g.*, Doc. No. 27-3 at 1.

1

The loan was for $286,380.00, plus interest at 8.9 percent per annum. *Compare id.*, *with* Doc. No. 56-4 at 116. The Hollidays' monthly payment on the first loan was $2,510.57. *See* Doc. No. 56-4 at 116. On February 18, 2009, Mr. Holliday entered into a refinancing agreement on the first loan and mortgage with Cambridge. Although Ms. Holliday's signature appears on the relevant documents, Ms. Holliday alleges that her signature was forged. *See, e.g.*, Doc. No. 57-2 ¶ 6; Doc. No. 57-4 at 6. At the refinancing, Cambridge loaned $308,550.00 to discharge the original loan. *See* Doc. No. 56-5; Doc. No. 27-5 at 1. The interest rate on the new loan was 6.5%. Doc. No. 56-4 at 116. Furthermore, the refinancing caused the Hollidays' monthly mortgage payment to decrease by approximately $200. *See* Doc. No. 56-3 at 112.

Cambridge contracted with Third-Party Defendant Eastern Settlement Corporation (ESC) to carry out the refinancing transaction and, in turn, ESC contracted with Defendant Hugh H. Cuthrell, III to notarize the loan documents. *See* Doc. No. 56-7 at 38, 43–46, 48. Ms. Holliday alleges that Mr. Cuthrell notarized the transaction despite witnessing Mr. Holliday forge her signature. Doc. No. 2 ¶ 4. Mr. Cuthrell, however, states that Ms. Holliday was present during refinancing and signed the note in his presence. Doc. No. 56-7 at 39. Cambridge subsequently assigned the note to BAC. *See* Doc. No. 27-6 at 1.

On June 3, 2009, Ms. Holliday filed the instant Complaint. Doc. No. 2. In her Complaint, Ms. Holliday asserted six claims. They are: (1) fraud; (2) fraudulent concealment; (3) violations of the Maryland Finder's Fee Act; (4) violations of the Real Estate Settlement Procedures Act (RESPA); (5) violations of the Federal Truth-in-Lending Act (TILA); and (6) negligence. In response, BAC filed a Counterclaim against Ms. Holliday, by which it sought an equitable lien on the Property. Doc. No. 27.

In the meantime, Cambridge asserted a crossclaim against Mr. Cuthrell for indemnification. Doc. No. 13. Cambridge also asserted a third-party complaint against Eastern Settlement Corporation (ESC). Doc. No. 11. The third-party complaint asserts claims for breach of contract, fraud, and negligence based on allegations that ESC had an obligation to close the refinanced loan and improperly delegated this duty to Mr. Cuthrell. Cambridge filed the third-party complaint on September 3, 2009. The record does not reflect that Cambridge served ESC with process.

Subsequently, the Court ordered Ms. Holliday to show cause why the following Defendants should not be dismissed for failure to effect service of process: (1) Mr. Cuthrell; (2) US Recordings; and (3) John Does 1 through 100. Doc. No. 19. Mrs. Holliday responded by providing affidavits of service for Mr. Cuthrell and US Recordings. *See* Doc. No. 20. Accordingly, on December 1, 2009, the Clerk entered an order of default as to US Recordings and Mr. Cuthrell. Doc. No. 24.

Sometime later, BAC moved for summary judgment. Doc. No. 56. On August 11, 2011, this Court issued a Memorandum Opinion and Order (Opinion) that had two primary consequences. Doc. Nos. 59–60. First, the Court dismissed all of Mrs. Holliday's claims against BAC. Second, the Court granted BAC the relief it sought in its Counterclaim. The Court directed BAC to file a proposed judgment reflecting the current total amount of the equitable lien it held on the Property. On August 26, 2011, the Court approved BAC's proposed judgment, thereby ordering and declaring that (1) the amount due under the mortgage was $371,881.67 and (2) interest would continue to accrue on the $371,881.67 at the rate of 8.9 percent per annum. Doc. No. 62.

In the meantime, Cambridge asserted a crossclaim against Mr. Cuthrell for indemnification. Doc. No. 13. Cambridge also asserted a third-party complaint against Eastern Settlement Corporation (ESC). Doc. No. 11. The third-party complaint asserts claims for breach of contract, fraud, and negligence based on allegations that ESC had an obligation to close the refinanced loan and improperly delegated this duty to Mr. Cuthrell. Cambridge filed the third-party complaint on September 3, 2009. The record does not reflect that Cambridge served ESC with process.

Subsequently, the Court ordered Ms. Holliday to show cause why the following Defendants should not be dismissed for failure to effect service of process: (1) Mr. Cuthrell; (2) US Recordings; and (3) John Does 1 through 100. Doc. No. 19. Mrs. Holliday responded by providing affidavits of service for Mr. Cuthrell and US Recordings. *See* Doc. No. 20. Accordingly, on December 1, 2009, the Clerk entered an order of default as to US Recordings and Mr. Cuthrell. Doc. No. 24.

Sometime later, BAC moved for summary judgment. Doc. No. 56. On August 11, 2011, this Court issued a Memorandum Opinion and Order (Opinion) that had two primary consequences. Doc. Nos. 59–60. First, the Court dismissed all of Mrs. Holliday's claims against BAC. Second, the Court granted BAC the relief it sought in its Counterclaim. The Court directed BAC to file a proposed judgment reflecting the current total amount of the equitable lien it held on the Property. On August 26, 2011, the Court approved BAC's proposed judgment, thereby ordering and declaring that (1) the amount due under the mortgage was $371,881.67 and (2) interest would continue to accrue on the $371,881.67 at the rate of 8.9 percent per annum. Doc. No. 62.

On October 6, 2011, the Court scheduled the case for a jury trial to be held on February 14, 2012 at 9:45 a.m. On the same day, the Court conducted a telephonic status conference with the Parties. *See* Doc. Nos. 63–64. During the telephonic status conference, the Parties informed the Court of their intention to file various additional motions based on the Court's Opinion. In essence, counsel for Cambridge represented that the reasoning in the Court's Opinion demonstrated the propriety of summary judgment in its favor on Ms. Holliday's claims.

Pursuantly, on November 9, 2011, Ms. Holliday filed a Motion for Leave to File an Amended Complaint (Motion for Leave). Doc. No. 67. Through this Motion, Ms. Holliday seeks to add a seventh count to her original complaint for declaratory judgment. Under this count, Ms. Holliday alleges that the deed of trust securing the refinanced loan (second deed of trust) is void ab initio on account of the alleged forgery. As a result, Ms. Holliday avers that the second deed of trust "is not entitled to protection under a theory of equitable subrogation as it is void from its inception and a nullity therefrom." Doc. No. 67-1 ¶ 86.

On November 30, 2011, Cambridge filed a Motion for Summary Judgment. Doc. No. 72. In this Motion, as indicated, Cambridge argues that it is entitled to summary judgment on five of the six Counts of Ms. Holliday's Complaint for essentially the same reasons for which the Court granted summary judgment in favor of BAC. On the heels of this Motion, Ms. Holliday filed a Motion to Set Aside Judgment (Motion to Set Aside). Doc. No. 74. Ms. Holliday argues therein that the Court erred in granting summary judgment in favor of BAC because whether the second deed of trust was forged is a fact in dispute. Ms. Holliday contends that this dispute is genuine because the forgery of the second deed of trust would render it void ab initio. Therefore, in Ms. Holliday's estimation, equitable subrogation would not apply. These Motions are ripe.

During the pendency of these motions, the Court issued a Revised Memorandum to Counsel scheduling a three-day jury trial to begin on May 15, 2012. For its part, the pretrial conference is scheduled to take place on April 26, 2012 at 9:15 a.m. Doc. No. 81.

## II.     STANDARD OF REVIEW

### A.     Motion to Amend

Once the scheduling deadline to file an amended complaint has passed, the moving party must satisfy the two-prong test under Federal Rules of Civil Procedure 15(a) and 16(b)(4) before courts will grant leave to amend a pleading. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008). First, the moving party must meet the threshold "good cause" standard of Rule 16(b)(4). *See id.* at 298. If the movant satisfies Rule 16(b)(4)'s good cause standard, the movant must then pass the test for amendment under Rule 15(a). *See id.* at 298–99; *see also Daso v. Grafton Sch., Inc.*, 181 F. Supp.2d 485, 488 (D. Md. 2002).

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant satisfies the good cause requirement by showing that, despite due diligence, it could not have brought the proposed claims in a reasonably timely manner. *See Montgomery v. Anne Arundel County, Md.*, 182 Fed. App'x 156, 162 (4th Cir. 2006). The factors courts consider in determining good cause are the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp.2d 757, 768–69 (D. Md. 2010) (citation omitted).

Once the movant has met the burden of showing good cause, the inquiry shifts to Rule 15(a), which pertinently provides that courts should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a). Courts should deny leave to amend only when

5

"the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted).

**B.     Motion to Set Aside**

Rule 54(b) applies because Ms. Holliday moves the Court to set aside an interlocutory order rather than a final judgment. *See, e.g.*, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). In pertinent part, Rule 54(b) provides that courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (footnote omitted) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Because of such discretion, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citation omitted). Nevertheless, "doctrines such as law of the case . . . have evolved as a means of guiding" a district court's discretion to revise or reconsider interlocutory orders. *Id.* at 515 (citing *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir.1988)). The law of the case doctrine dictates that courts must follow the law that a prior decision establishes unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *See Sejman*, 845 F.2d at 69 (quoting *EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054 (5th Cir. 1980)). Yet the law of the case doctrine cannot categorically bar a district court from reconsidering an interlocutory order in light of federal courts' "ultimate responsibility . . . to reach the correct judgment under law." *Murphy*

*Farms*, 326 F.3d at 515. Still, "concerns of finality and judicial economy" may temper this concern. *Id.* Therefore, relief is rarely ever appropriate "[w]hen the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Pritchard v. Wal Mart Stores, Inc.*, 3 Fed. App'x 52, 53 (4th Cir. 2001) (citation and internal quotation marks omitted).

**C.     Motion for Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

56(c), the Court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III.  LEGAL ANALYSIS

#### A.  Motion to Set Aside

##### *1.  Equitable Subrogation*

As stated above, Ms. Holliday argues that the Court erred in granting summary judgment in favor of BAC because whether the second deed of trust was forged is a fact in dispute. Ms. Holliday contends that this dispute is genuine because the forgery would render the second deed of trust void ab initio. In this event, Ms. Holliday maintains that the doctrine of equitable subrogation would not apply.

In its Opinion, the Court declined to address Ms. Holliday's argument that the second deed of trust was void ab initio, which Ms. Holliday first asserted in a responsive memorandum. The Court reasoned:

> However, in her Complaint, the plaintiff has not sought a declaratory judgment from the Court seeking the Deed of Trust to be declared void ab initio, and therefore, at this juncture, the Court will not assess the validity of Plaintiff's claim that the mortgage is void.

Doc. No. 59 at 6.

Upon further review of the Complaint, the Court acknowledges that this decision was improper. Count I of Ms. Holliday's Complaint asserts a fraud claim. Under Count I, Ms. Holliday repeatedly alleges that her signature on the second deed of trust was forged. It is well-established that forged deeds are void ab initio. Furthermore, forgery is a species of fraud. Therefore, despite the longstanding distinction between forgery and fraud for the purposes of

8

determining whether a deed is void or voidable, the Complaint contained allegations from which the Court could have inferred that Ms. Holliday sought to have the Court declare the second deed of trust void ab initio. Beyond that,
BAC filed a Counterclaim in which it asserted its equitable subrogation claim. In arguing that the second deed of trust was void ab initio, Ms. Holliday acted within her right to respond to this claim.

That said, with one minor exception that the Court will note below, the Court properly granted summary judgment in favor of BAC on its equitable subrogation claim. Ms. Holliday's argument that the Court erred in applying the doctrine of equitable subrogation presupposes that courts improperly apply said doctrine where the deed of trust that the putative subrogee seeks to use as security is void ab initio. This is an unduly restrictive view of equitable subrogation.

The Maryland Court of Special Appeals outlines the doctrine of equitable subrogation in *Bierman v. Hunter*, 988 A.2d 530 (Md. Ct. Spec. App. 2010). Equitable subrogation, alternately referred to as legal subrogation, "'arises by operation of law when there is a debt or obligation owed by one person which another person, who is neither a volunteer nor an intermeddler, pays or discharges under such circumstances as in equity entitle him to reimbursement to prevent unjust enrichment.'" *Id.* at 542–43 (quoting *Hill v. Cross Country Settlements*, LLC, 936 A.2d 343, 361 (2007)). "Subrogation thus involves the 'substitution of one person to the position of another, an obligee, whose claim he has satisfied.'" *Id.* at 543 (quoting *Hill*, 936 A.2d at 362) (some internal quotation marks omitted). "The substituted person, however, 'can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor.'" *Id.* (emphasis omitted) (quoting

*Hill*, 936 A.2d at 362). "Accordingly, subrogation 'requires an underlying and independent legal basis upon which [a party] may assert its claims.'" *Id.* (quoting *Hill*, 936 A.2d at 363).

Authority from other jurisdictions comports with the principles that the *Bierman* court outlined. For instance, applying California and Nevada law, the Ninth Circuit has held that equitable subrogation is generally appropriate in the following circumstances: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." *Mort v. United States*, 86 F.3d 890, 893–94 (9th Cir. 1996) (citation omitted). At the same time, the *Mort* court stressed that "[e]quitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also whenever one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Id.* (citation and internal quotation marks omitted). Consonantly, the Supreme Court of Missouri has declared, "There is no general rule regarding when the doctrine of equitable subrogation applies. Its application depends on the facts of the case." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 134 (Mo. 2007).

In light of these principles, the Court committed no error in declaring that BAC was entitled to a first-priority equitable lien on the Property. The following facts are not in dispute: (1) Ms. Holliday bound herself to the original loan of $286,380.00 and concomitant first mortgage; (2) Cambridge loaned to at least Mr. Holliday $308,550.00 to pay off the original loan; (3) the original loan was thereby discharged; and (4) Cambridge assigned the $308,550.00 loan to BAC. Additionally, a reasonable juror could only conclude that the refinanced loan

provided the Hollidays with at least as favorable terms as the original loan. It is undisputed that the interest rate on the refinanced loan is 6.5%, nearly two-and-a-half percentage points under that of the original loan. Furthermore, Mr. Holliday's uncontroverted testimony is that the refinancing of the original loan caused the mortgage payments to decrease by approximately $200.

Based on these undisputed facts, equity demands that the Court subrogate to BAC the rights of Cambridge under the first deed of trust. Ms. Holliday voluntarily assumed a $286,380.00 debt to acquire the Property. Ms. Holliday had an obligation to repay the $286,380.00 and, through the first deed of trust, the Property was pledged as security for said sum. Although Ms. Holliday alleges that her signature on the second deed of trust was forged, the accompanying refinanced loan was not on less favorable terms than its predecessor. Later, Cambridge assigned the refinanced loan to BAC, whereby BAC subjected itself to the risk that Ms. Holliday would fail to repay the loan. Undeniably, Ms. Holliday is benefitting from the refinanced loan inasmuch as she is residing at the Property and failing to make mortgage payments. *See* Doc. No. 57-2 ¶¶ 21–27. In short, BAC satisfied Ms. Holliday's debt on the Property and granting BAC a first-priority equitable lien on the Property is the only viable means of (1) protecting BAC's interests and (2) preventing Ms. Holliday from becoming unjustly enriched.

Ms. Holliday's counterargument is unpersuasive. The doctrine of equitable subrogation may apply in the case of a subsequent invalid deed of trust. The *Bierman* court faced a similar factual scenario. There, a woman (Maria) contended that her husband forged a $320,000 loan and deed of trust, a $170,284.30 portion of which was to be used to satisfy a preexisting deed of trust on her and her husband's property. *Bierman*, 988 A.2d at 533. Although the court ultimately

held that the lender was not entitled to equitable subrogation on other portions of the $320,000 loan, the court did not upset the trial court's decision to give the lender an equitable lien on the property up to the $170,284.30 debt that Maria voluntarily assumed and whose benefit she enjoyed. *See id.* at 535, 542, 545. Here, similarly, even though Ms. Holliday contends that the refinanced loan and the second deed of trust stem from forgery, the proceeds of the refinanced loan were used to satisfy the original loan and first deed of trust that she voluntarily assumed and whose benefit she has, and continues to, enjoy.

Ms. Holliday makes much of the fact that Cambridge assigned its purported rights under the refinanced loan and second deed of trust to BAC, as if to say that BAC discharged a prior invalid mortgage. This argument is specious. Voiding ab initio the refinanced loan and second deed of trust would fail to affect the validity of the original loan and first deed of trust. To see how this is so, it is helpful to consider what would have happened had Cambridge not assigned its rights under the refinanced loan and second deed of trust to BAC. Although the alleged forgery, if true, would have voided ab initio the refinanced loan and second deed of trust, the forgery would not have altered the validity of the original loan and deed of trust. In short, Ms. Holliday still would have been on the hook for $286,380.00, plus interest at 8.9 percent per annum. Thus, as a matter of equity, BAC's proceeds were used to discharge the original loan, not the refinanced loan. Concluding otherwise would be, at best, to elevate form over substance—the antithesis of equity. Accordingly, the Court did not err in declaring that equity entitled BAC to a first-priority lien on the Property.

The Court must however, revisit a relatively minor aspect of its Declaratory Judgment in favor of BAC. Therein, based on BAC's proposed judgment, the Court ordered and declared that the amount due as of the date of judgment was $371,881.67. The Court further ordered and

declared that interest would accrue on the amount due at the rate of 8.9 percent per annum. The $371,881.67 amount due was based, in part, on BAC's assertion that "in the equitable subrogation context, interest on [the] equitable lien accrues at [the] rate on [the] mortgage that was paid off, not the rate on the new loan." Doc. No. 61 ¶ 5 (citing *Pappas v. E. Savs. Bank*, 911 A.2d 1230, 1232–33 (D.C. 2006)). The Court has reviewed *Pappas* and it does not appear to support the proposition for which BAC has cited it. Furthermore, even if it did, it seems unfair to allow the interest on the loan to accrue at 8.9% when the interest rate on the new loan was only 6.5%. To prevent BAC from experiencing a windfall, the Court deems it appropriate to enter an Amended Declaratory Judgment reflecting this realization.

   *2.* *Whether the Court Erred in Granting Summary Judgment in Favor of BAC on All of Ms. Holliday's Claims Against BAC*

The Court does not believe it committed error in granting summary judgment in favor of BAC on all of Ms. Holliday's claims against BAC. As a preliminary matter, Ms. Holliday appears to premise her claims against BAC on the idea that the alleged wrongful acts of Cambridge should be imputed to BAC. This argument fails because Maryland law generally does not recognize the notion of assignee liability. *See* Doc. No. 59 at 5 (citing cases). To the extent Ms. Holliday founds her claims on the Flying Dutchman of assignee liability, the Court rejects them outright. Having said that, the Court devotes the subsequent space to explaining in somewhat more detail wherein Ms. Holliday's claims against BAC lack merit.

   a. Counts I & II—Fraud and Fraudulent Concealment

To recover damages in a fraud action, a plaintiff must prove the following elements: (1) that the defendant made a false representation to the plaintiff; (2) that the falsity was known to the defendant or made with reckless indifference to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the

misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *See, e.g.*, *Nails v. S & R, Inc.*, 639 A.2d 660, 668–69 (Md. 1994) (citations omitted). In this case, Ms. Holliday cannot satisfy elements one through three because BAC did not participate in the allegedly fraudulent refinancing transaction. Furthermore, a reasonable juror could only conclude that she suffered no damages on account of the alleged forgery because, through the refinancing loan, she received a loan that offered a lower interest rate and lower monthly payments. Although Ms. Holliday alleges that she could not pay the loan because of the allegedly fraudulent refinancing transaction, her allegations are vague legal conclusions that fail to create a genuine factual dispute.

The essential elements of a claim for fraudulent concealment resemble those for a fraudulent misrepresentation claim. They are: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999) (citation omitted). "'**Absent a fiduciary relationship**, [the Court of Appeals of Maryland] has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence.'" *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007) (emphasis added) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 976 n.14 (2000)). In other words, for a claim of fraudulent concealment to be actionable, plaintiffs generally must allege and prove the existence of a fiduciary relationship. *See id.*

In this case, Ms. Holliday cannot satisfy elements one through three for two primary

reasons. First, there was no fiduciary relationship between BAC and Ms. Holliday as their relationship is purely contractual. Second, BAC did not participate in the alleged forgery. Furthermore, as with Ms. Holliday's fraud claim, no reasonable juror could conclude that Ms. Holliday suffered damages on account of the alleged fraud. Accordingly, the Court committed no error in granting summary judgment in favor of BAC as to Counts I and II of Ms. Holliday's Complaint.

      b.  Count III—Violation of the Maryland Finder's Fee Act

The Court did not expressly address this claim in its Opinion. This is likely because Ms. Holliday asserted it only against Cambridge. *See* Doc. No. 2 ¶¶ 54–60. Furthermore, even if Ms. Holliday had asserted it against BAC, it still would have failed as a matter of law as the at-issue provisions of the Act apply to lenders and brokers. BAC is not a broker. Nor was BAC involved in the refinancing transaction that serves as the factual backdrop of this claim. As a result, summary judgment in favor of BAC on Count III was proper.

      c.  Count IV—Violations of RESPA

Apparently, Ms. Holliday asserts that BAC violated the following RESPA provisions: (1) 12 U.S.C. § 2603(b); (2) 12 U.S.C. § 2604(c); and (3) 12 U.S.C. § 2604(d). "12 U.S.C. § 2614 provides '[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction . . . .'" *Taggart v. Wells Fargo Home Mortg., Inc.*, Civil Action No. 10–cv–00843, 2010 WL 3769091, at *5 (E.D. Pa. Sep. 27, 2010). "The text of RESPA, therefore, does not provide a private right of action for claims under § 2603." *Id.* "In addition, courts have found no private right of action should be implied." *Id.* (citing cases); *see also, e.g.*, *Brophy v. Chase Manhattan Mortg. Co.*, 947 F. Supp. 879, 882 (E.D. Pa.1996) (holding that RESPA does not provide a

private right of action for § 2604). Thus, as RESPA provides no private right of action under §§ 2063–2064, Ms. Holliday's RESPA claims fail as a matter of law. Moreover, even if §§ 2063–2064 created a private right of action, Ms. Holliday's RESPA claims against BAC would fail because BAC was not present during the refinancing transaction and otherwise had no involvement in the settlement. Accordingly, the Court properly granted summary judgment in favor of BAC on Ms. Holliday's RESPA claims.

    d.  Count V—Violations of TILA

Ms. Holliday argues that the Court should rescind her loan pursuant to TILA. The Fourth Circuit has held that rescission is generally inappropriate where the borrower fails to show that she has the ability to repay the loan. *See Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820–21 (4th Cir. 2007). Correspondingly, the Court wrote in its Opinion that "Plaintiff has failed to demonstrate, let alone argue, that she is able to meet her tender obligation if rescission were in fact allowed in this case." Doc. No. 59 at 7–8. In the memoranda corresponding to the three outstanding motions, Ms. Holliday fails to address this aspect of the Court's Opinion. Ms. Holliday's silence is unsurprising considering that she all but concedes in her affidavit that she is not paying her home note. *See* Doc. No. 57-2 ¶ 21–33. For these reasons, the Court properly granted summary judgment in favor of BAC in relation to Ms. Holliday's TILA claims.

    e.  Count VI—Negligence

Ms. Holliday's negligence claim fails for a variety of reasons. First, as the Court determined in its Opinion, BAC owed Ms. Holliday no duty to protect her from the alleged forgery as their relationship was contractual. Second, Ms. Holliday has submitted no evidence suggesting that BAC had anything to do with the alleged forgery and, as stated earlier, Maryland law does not recognize the fanciful concept of assignee liability. Third, a reasonable juror could

only conclude that neither Cambridge nor Mr. Cuthrell was an agent of BAC as the record is barren of evidence suggesting such a relationship. Fourth, Ms. Holliday appears to predicate her negligence claim exclusively on BAC's alleged duties under TILA and RESPA. To the extent these Acts apply, they would preempt Ms. Holliday's negligence claim. Finally, Ms. Holliday's negligence claim fails because, for reasons expressed above, no reasonable juror could conclude that she suffered a loss on account of BAC's alleged negligence, whatever that may be. Accordingly, the Court committed no error in granting summary judgment in favor of BAC on Ms. Holliday's negligence claim.

***

The preceding analysis demonstrates three primary propositions: (1) BAC is entitled to a first-priority equitable lien on the Property; (2) considerations of fairness require the Court to amend its Declaratory Judgment such that it reflects an appropriate rate of interest; and (3) the Court properly granted BAC's motion for summary judgment on all six Counts of Ms. Holliday's Complaint. For these reasons, the Court denies Ms. Holliday's Motion to Set Aside.

**B.    Motion for Summary Judgment**

As stated above, Cambridge argues in its Motion for Summary Judgment that it is entitled to summary judgment on all Counts of Ms. Holliday's Complaint other than Count III. Cambridge filed its Motion for Summary Judgment in the wake of the Court's Opinion, reasoning that it is entitled to summary judgment for essentially the same reasons for which the Court granted summary judgment in favor of BAC. The Court agrees. As a result, the Court dismisses Counts I & II and IV—VI of Ms. Holliday's Complaint as against Cambridge. The only remaining claim against Cambridge is Count III—violations of the Maryland Finder's Fee

Act. Consequently, Ms. Holliday's Maryland Finder's Fee Act claim against Cambridge to proceed to trial.

   *1.*   *Counts I & II—Fraud and Fraudulent Concealment*

  Cambridge is entitled to summary judgment on these two Counts for the reasons laid out in Part III.A.2.a, *supra*. Although the standard of review is different for motions for reconsideration and motions for summary judgment, the Court explained in Part III.A.2.a that no reasonable juror could conclude that Ms. Holliday could establish various elements of her fraudulent and fraudulent concealment claims. Those reasons apply equally here.

  Ms. Holliday argues that Mr. Cuthrell, unlike BAC, was an agent of Cambridge. She thus invites the Court to impute the allegedly wrongful acts of Mr. Cuthrell to Cambridge. The Court declines this invitation. "Agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control and consent by the other so to act." *Ins. Co. of N. Am. v. Miller*, 765 A.2d 587, 593 (Md. 2001) (citations and internal quotation marks omitted). In this case, Ms. Holliday has submitted no evidence indicating that Cambridge exercised control over Mr. Cuthrell or that Cambridge and Mr. Cuthrell intended to create an agency relationship. It is undisputed that Cambridge contracted with ESC to carry out the refinancing transaction and, in turn, ESC contracted with Mr. Cuthrell to notarize the loan documents. *See* Doc. No. 56-7 at 38, 43–46, 48. Furthermore, as to his relationship with ESC, Mr. Cuthrell testified that he was an independent contractor. *See* Doc. No. 56-7 at 38. Mr. Cuthrell explained that he was part of an entity called the National Notary Association, and that he would get calls from title companies—in this case ESC—to do closings. *See id.* Mr. Cuthrell also testified that he was paid by the job, not on a wage basis. *See id.* at 44; *see also, e.g.*, *Dep't of Labor, Licensing and Regulation v.*

*Fox*, 697 A.2d 478, 487 (Md. 1997) (payment by the job "is indicative of an independent contractor"). And, although Mr. Holliday stated that Mr. Cuthrell was an agent Cambridge, his statement is an unsupported legal conclusion and, hence, warrants no weight. In sum, based on the record evidence, no reasonable juror could conclude that Mr. Cuthrell acted as Cambridge's agent. Accordingly, the Court grants Cambridge's Motion for Summary Judgment as to Counts I & II of the Complaint.

   2.  *Count IV—Violations of RESPA*

As explained in Part III.A.2.c, *supra*, Ms. Holliday's RESPA claim fails as a matter of law because RESPA provides no private right of action under §§ 2063–2064. Consequently, the Court dismisses Count IV of Ms. Holliday's Complaint in relation to Cambridge.

   3.  *Count V—Violations of TILA*

The Court grants summary judgment in favor of Cambridge on Ms. Holliday's TILA claims for the reasons stated in Part III.A.2.d, *supra*. Simply put, rescission under TILA is inappropriate because Ms. Holliday has neither alleged nor shown that she is capable of repaying her home loan.

   4.  *Count VI—Negligence*

Ms. Holliday's negligence claim against Cambridge fails for the reasons set forth in Part III.A.2.d, *supra*, as well as the agency analysis in Part III.B.1, *supra*. Therefore, the Court grants Cambridge's Motion for Summary Judgment as to Count VI of the Complaint.

**C.**  **Motion to Amend**

In her Motion to Amend, Ms. Holliday seeks to add a seventh count alleging that the second deed of trust was void ab initio and that, consequently, it is not subject to an equitable subrogation claim. The Court held in Part III.A.1 that, even though it should have considered Ms.

Holliday's argument that the second deed of trust was void ab initio, it committed no error in its Opinion and that BAC was entitled to a first-priority equitable lien on the Property. Therefore, Ms. Holliday's Motion to Amend is moot. Alternatively, the Court denies the Motion to Amend as futile.

**D.     Odds and Ends**

The Court has four final points to make. First, as discussed above, the Court will enter an Amended Declaratory Judgment reflecting an appropriate rate of interest on BAC's first-priority equitable lien. Second, as the record does not reflect that Cambridge has served Third-Party Defendant ESC, the Court will order Cambridge to show cause why it should not dismiss ESC from this action. Third, the Court sees that Ms. Holliday has yet to file motions for default judgment against US Recordings and Mr. Cuthrell although the Clerk has entered orders of default against them. At this late stage in the litigation, if she so chooses, it makes most sense for Ms. Holliday to request default judgments against these Defendants at the impending trial. Although the basis for damages against these Defendants is not entirely clear to the Court, Ms. Holliday is entitled to seek to prove legally cognizable damages. Fourth, the Court will dismiss John Doe Entities 1 through 100 from the action as the record does not reflect that Ms. Holliday has made an attempt or seeks to identify any such defendants.

**IV.     CONCLUSION**

For the foregoing reasons, the Court (1) **DENIES** the Motion to Set Aside, (2) **GRANTS** Cambridge's Motion for Summary Judgment, and (3) **DENIES AS MOOT** the Motion to Amend. A separate Order will follow.

| April 20, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |